Good morning, Your Honor. Donald Cook representing the appellant, Mr. Alvarado. If I may use a hypothetical, you have a warrant for a Kelly Smith, 6'5", Caucasian male. Police arrest Kelly Smith, 5'1", black female. Now, obviously, one would know this Kelly Smith cannot be the Kelly Smith that the warrant describes. But the trial court here took the position that if you have on the one hand a valid warrant, not something made up on Adobe Photoshop, it really is a warrant, and if you're holding the person for only a few days, certainly less than the days at issue in Erdman versus County of Cochise, then there's no constitutional violation. There's no claim. That's wrong. The police have to have probable cause at a minimum to believe that the person they're holding is the person on the warrant. Now, in this case. Now, your complaint says that they did this. What's the terminology? Live scan. They did the live scanning as soon as they booked the guy. They bring him to the station and then they live scan him. Do they live scan in the field or is it just in the... No, no. It's at the station. At the station. So as soon as they live scan, they've got what? What comes back to them? What comes back to them are the fingerprint-based identifiers. These are identifiers created by law enforcement to deal with the problem of... Like the CII number. CII number, FBI number, L.A. Maine number. Okay. Now, in your complaint, you allege that they had a CII number that didn't match, correct? Correct. But you didn't mention the other numbers in your complaint, correct? No, I didn't. However... You say you did not? I did not. I mean, I did mention the FBI number in the complaint. It was in one of the paragraphs. With respect to Mr. Alvarado, the complaint does not specifically allege, I don't think, that the FBI number didn't match either. However... That's what I'm referring to. I'm specifically referring... Correct. Now, you also mentioned that they easily had available Mr. Alvarado's fingerprints. How easily available are the fingerprints? Well... Does it seem from the fingerprint identifier that is to say the CII number? I mean, Mr. Alvarado's fingerprints, we're talking about my client's fingerprints. Correct. Sure, they have them. What they do, when they live scan, they take the hand, put it on a... And do they have the fingerprints of the other guy? Yes, they do. And where are those and how readily accessible are they? The actual prints, there are a couple of locations, Department of Justice, and because this is an L.A. County warrant, they also have it there with the L.A. County. The reason how available they are, the warrant, it's alleged, had Walford Hernandez's CII number. Right. You run the CII number, you come back with the prints in a matter of seconds. And does the physical picture of the prints show up there right there? Do they have to go to a file cabinet? Do they have to go across town? No, it comes over the computer. And so a picture of the print comes, so all they have to do is enter in the CII number of the other guy and the picture of the print comes up right there? Yeah. They just push a button and there it is? Correct. Okay. But, you know, this comes up on a 12B6 issue. Right. And in the hearing, I informed the court I could allege the additional facts, which were that there are three unique numerical identifiers, all fingerprint-based, CII number, FBI number, L.A. main number, none of which matched my client, all of which go to this other person, and I could have alleged that in a complaint. The trial court's position was it doesn't matter. It could be totally different. All that matters is this is a real warrant, and we're talking about a time period here of less than, well, only four days. And under Baker v. McCollum, the Erdman decision, there's no constitutional violation. Now, so your argument is then for purposes of this 12B6, actually, we should treat the all three numbers as not having matched? Oh, absolutely. And the trial court acknowledged that at the hearing, that if it felt that it needed those additional allegations, it would grant leave to amend. So those are the allegations we're dealing with. And I just add a bit of a postscript to that, too. I didn't have the actual warrant then. I don't know what the physical descriptors say on the warrant. I didn't learn that until after the case was dismissed and through a fortuitous turn of events I happened to find a warrant. But the physical descriptors didn't match either. I mean, they were like 60 pounds difference in weight, three inch difference in height, and the birth dates don't match. But the district court's position and the defendant's position in the trial court, it's not the position they take here, but in the trial court was all that matters is it's a warrant, a real warrant, and it's less than four days. So that might do a probable cause for the moment, you know, when they first seize him. Now, I have another question. I want to follow up on this allegation of the four days and what position the district court took in Judge Fletcher's question. So he's picked up in the field by the police. LAPD. In a car, and they take him to? Take him to the station. Station, wherever they go. Right. And that's where you say at the station they can do the live scan? And, in fact, it's where they did do the live scan. Okay. So then they held him, despite what came back. Correct. And they held him for three days. Correct. Right. Then they took him to county. Correct. Now, is it also your allegation that the county, when they take him into the county jail, that they also do live scan at the county jail? No. Actually, the county jail does not do live scan. It's one of the requirements, however, before you can book in the county jail, that the arresting agency have done a live scan. Where does that come from? Is that a set of protocols between the county and the local police around this county? Correct. I mean, I have a number of these cases. I've deposed their designated agents on this, and the county jail has a very firm policy. They will not take any arrestee in unless the arresting agency has live scanned him, and that documentation is provided. So can the county ‑‑ does the county have independent authority to reject an arrestee? Oh, absolutely. I mean, where does that come from? I couldn't quite figure it out. As a matter of law, it's plaintiff's position. If you take custody of an arrestee, and you can know, you can tell. I mean, using the more obvious example that I gave you to start with, well, wait a minute. This is a 5'1 black female, and the warrant describes a 6'5 Caucasian male. At that point, they have a duty, certainly I would say under state law as well as under federal law, you can't take custody of that person because you know that the authority for taking custody, that is the warrant, does not apply to this person. When it's that obvious, that's plain. It would be similar to one officer making an arrest based on what the officer contends is probable cause. He turns it over to the other officer, and the other officer is informed of the basis. So is your claim, is it your position that the county should do live scan? Yeah. No, because actually it's already done. My position is they're supposed to read their paperwork. That's my position. So what's the constitutional violation? Is it fair to separate the county and the city, to look at them differently? For purposes of the constitutional violation, no. Factually, there is some differences. The constitutional violation is a Fourth Amendment violation. We're talking pre-arraignment here. The Fourth Amendment applies where it's obvious to a reasonable officer that this warrant does not apply to this person. Then you do not have a basis under the Fourth Amendment for seizing the person. But does the county have an obligation to examine the warrant and look at the person? Do they even get the warrant at the county? Well, actually, they get actually ‑‑ I realize we're going further than what's actually alleged in the complaint, but the practice is they're given a booking file, which includes the warrant abstract, includes the live scan, includes the documentation, and, again, on depositions I've taken of their PMKs. Again, your position would be it doesn't make any difference in any event. Yeah. I mean, you're supposed to read the paperwork, right? We're not talking about something that's hidden. I mean, perhaps the significance of the CII numbers, LMA numbers don't jump out with you, like the black female and the Caucasian male. But the law enforcement, it's like, that's major, because those numbers were created for the express purpose of dealing with the problems of aliases, people having similar names, similar descriptions, even the same birth dates. And from a CII number, you generate a criminal history, you identify people. Sure. Mistakes can be made. And so in your view, what the county jail had when they get this guy after three days held by the city, the paperwork they have has the live scan that shows what his CII number is, and the paperwork also shows the CII number of the other guy. Correct. Both of those things are in the paperwork. Correct. And they don't match. Correct. And you're also saying that for purposes of what we're now in front of us, you representative of the judge, you could amend the complaint to add that the other two numbers also did not match. Correct. So that all should have been in the paperwork. No match on any of those three numbers. Correct. And as I say, it turns out after the case was dismissed, I happened to find out about what the warrant actually had, and, gee, the birth date didn't match, and the height and the weight were off as well. How often do these numbers, are they mistaken? See, there's a whole big deal in this brief about one case in which there was a mistake. Yeah, yeah. Try about 1,000 people a year being put in wrong in L.A. County on warrants meant for other people at a minimum. I mean, I've done this discovery in other cases. Maybe my question isn't clear. How often is it that the paperwork comes up and it says, your CII number is X, but, in fact, your CII number is Y? How often does that happen? I don't know how often it happens. It is far less often, far less common than same name, similar name, similar physical descriptions. And when I've deposed the various jail personnel with L.A. County and other agencies, and I ask them about, you know, sometimes there are this problem of one person will have two CII numbers, which isn't supposed to happen. And they'll say, that is never supposed to happen. And when it does happen, you know, you immediately contact the Department of Justice. You generate criminal histories under each CII numbers. So you get to the bottom of it, because CII numbers are proxies for fingerprints. That's how law enforcement sees it. And while they recognize there can be mistakes made, as soon as it appears to be a mistake, it's like, stop the presses, get to the bottom of it, because we know it's not supposed to be that way. And it's what the police rely on to distinguish people. That's a common problem, obviously. You arrest someone and he gives you a phony name. I can't remember from your complaint, but did you allege that the LAPD has a set of policies with respect to live scan and what the officers in the street are supposed to do? No, I didn't allege any specific policy with respect to the officers in the street. What I alleged is they did live scan him, and they live scanned him pursuant to policy. And, of course, that would occur at the station. And, you know, the officers in the field, and in this case, I don't know, we don't have as defendants the new officers.  And I don't know. It's a Monell claim, right? It's a Monell claim. And I don't know at this point if the officers in the field should have known better. Because we never got discovery. I never got the warrant. Discovery was stayed. Maybe they made a mistake in the field and they should have known. Then again, it's possible that because they're operating with more limited information, they can be off the hook. But at the station, for sure, they had the information. I mean, the county's position is, and I'm saying again, I'm going outside the record. This is based on a testimony in another case by their sheriff's captain. If an agency tells us this is the guy on the paperwork, we're not going to question it. He goes in the county jail. Let a judge tell us that we're wrong. And these cases come before the courts. And what do the judges do? They say, well, don't you, like, have, like, fingerprints or something, and you can compare the two? Well, yeah, we got CIA numbers. Well, do they match? Well, no, they don't. Well, then maybe he's not the right guy. And then the guy gets cut loose. I mean, all of which could have happened, obviously, before the guy gets to court. But they won't read the paperwork. They don't want to take the heat, I suspect, for having released someone that maybe- What do we do with our case law? Let's assume that we treat the two entities, you know, separately, okay? Sure. City holds him for three days. County holds him for one day. How was he finally released? That was when we finally went front in front of the judge? Yeah, he went in front of the judge, and he hired an attorney. And the attorney says- Okay, so that's what happens. How do we handle this problem of, well, but the county only held him for one day? And does Baker tell us that an ironclad rule, anything shorter than three days is de minimis and we don't- No, Baker- No, Baker is a due process case. And Baker, there was obviously probable cause to believe that the arrestee, the prisoner, was the person on the warrant, right? You know, because everything matched. And that's why Baker doesn't apply here. Here the claim is not only did he not match what the warrant described, but it was plainly obvious to any reasonable officer- I don't want to put words in your mouth, but I think your argument then is, well, if they should have known from the information they had right there in front of them, and it didn't take anything other than simply opening up the file to know this, the fact that it was only, they only held him for a day is irrelevant to the constitutional violation, because they should have known in 30 seconds. Correct. Correct. Okay. Where you don't have probable cause to hold someone, you don't have probable cause to hold them for 10 minutes. We've used up all your time. Let's hear from the other side, and we'll give you a chance to respond. Thanks. Good afternoon at this point, Your Honors. Scott Caron, on behalf of the county defendants, just so the Court is aware, I do intend to yield some time to the city so that the city can- Do you know how you want to divide it up? I think it's going to be five minutes for me. Okay. Even though you're the three-day people?  It was our motion to dismiss, so we decided to do it that way. This case involves, I think, a straightforward, a very basic straightforward application of Baker v. McCollin, which actually rejected the very argument that the plaintiff is making here. In Baker v. McCollin, there was evidence presented in the district court that the part of county sheriff, the defendant in Baker, had a file from the original arrest of Leonard McCollin, and in that file was the confiscated driver's license from the original arrest of Leonard McCollin. And an argument was made in Baker that all the sheriff's department had to do was open up the file and read what it had. Take a look at the photograph on the driver's license, the forged driver's license, compare it to Lenny McCollin, who was the arrestee, the plaintiff. You'll see that they don't match, and you can simply release him. That argument was rejected by the Supreme Court. That was actually part of a lengthy dissent in Baker by Justice Stevens. I think it's important in this case to focus on or look at the events as they unfolded from the county's perspective. You have LAPD brings this guy to the county, says here's a guy, here's a warrant, they match. Okay, that's all LASD knows. That's all the sheriff's department knows. The sheriff's department doesn't know why he was arrested. They know he was arrested on a warrant, but they don't know what led LAPD to believe that he was the subject of the warrant. Probable cause, by the way, can be based on more than just information on pieces of paper. We've submitted cases where probable cause determination was based on the location in which the individual was arrested or maybe the individual was arrested because he was driving a certain vehicle. Let me ask you this, and I'm asking almost for a legal interpretation of Baker. Let's assume that you've arrested somebody, you have him in the county jail, and you know that he's not the right guy. Not merely do you have information that if you looked at it, you would know. You know, your officer knows, and he puts him in the jail anyway for a day. Is that a violation? Yes. There's actually an actual knowledge exception to Baker v. McClellan, and we cited several of those cases in our briefs. I don't think that this is a case of actual knowledge because as the plaintiff concedes, it's entirely possible for one individual to have two CII numbers, and I can guarantee if the plaintiff knows that, then the law enforcement people who are running the jails know that as well. Yeah, but that doesn't appear to be the case here that he had two numbers. It may very well be. We don't know. What do I make of the language in Baker that says, but we're quite certain that detention of three days over a New Year's weekend does not and could not amount to deprivation? It sounds like there's something special about three days and a New Year's weekend. Right. Well, I think the point was when the court said that, that they brought him to court at the earliest possible opportunity. In other words, he was arrested, I guess, on a Friday night, was held over the weekend. Monday was New Year's Day, so he was brought to court on January 2nd, the Tuesday. That's exactly what happened here, and that's exactly what the Constitution requires. Bring him to court at the earliest opportunity. If you look at what happened here, the Sheriff's Department didn't know anything about the circumstances leading up to the arrest. All they knew was that there were different numbers. Okay. A live scan sheet that has one set of numbers, a warrant that has another set of numbers. At that particular point, it would, I would submit, be reckless to simply release him on grounds that, well, we disagree with LAPD. We don't think that. Oh, sorry. Go ahead. Does the city and the county have no judge available at all during the week, during the weekends? Well, I believe in this case he was brought to LA County on a Monday and brought to court on Tuesday. So I believe how it happened. So I don't think he was there. That doesn't answer my question. Do they have somebody available on Saturday and Sunday? In the courts? Yeah. I don't believe so. I don't believe so. No? I could be wrong, but I honestly, I don't know, but I don't believe so. They can take him to court on the following. That would be amazing. I've seen enough cases where someone is held over a weekend simply because there was no one to do the arraignment. They can get a probable cause determination. Well, there's a probable cause determination done by the arresting agency. Right. This is pursuant to an arrest warrant. Correct. Correct. Well, it's actually a bench warrant, I think. So, I mean, our point here is that there's no obligation, there's no constitutional obligation on the county to conduct a second probable cause determination. Go ahead, Judge Duffy. No, no, no. Go ahead. I was just going to ask. I don't quite. So the county has no, does the county have any independent authority to release people? Or let me phrase that differently. Do they have to take in everybody that the local police bring in? They do. They have a policy that requires them to. That's not my question. What do they have a policy? You mean a legal requirement? Are they required by some statute or county ordinance that says whenever a local agency brings a prisoner, an arrestee, to the jail, the county must take them? You know, I don't believe so. I believe there's a statute that says that if the individual is committed by lawful authority, they have to take him. But I don't think there's a statute that says, you know, arresting agency brings him to the county jail, the county has to take him. I don't believe that's the case. But I don't think for purposes of this case that matters. Because what the county did was the county acted on the information it had and brought him to court at the earliest possible opportunity, the following day. And that's all that the Constitution requires, Baker v. Mahala says. So here, these two agencies are working together. You could say that, yeah. I think that's accurate. Well, I want to be careful about saying, answering that question yes, because, again, the Sheriff's Department doesn't I'm not trying to trick you. I'm just trying to understand how this works. Well, the reason I want to be careful about that is because I want to stress, the Sheriff's Department doesn't have all of the information about the arrest that LAPD has. To the extent that they're relying on LAPD, yeah, they're working with LAPD. Mr. Cook said that a county jail has policies that require the arresting agencies to do a live scan. That's correct. So in that sense, they are working together. Correct. Correct. Now, what do we do with, I understand it's not in the record. Assume that for the moment that it is in the record, that we not only have the no match of these three numbers, but we also have the pretty severe no match of the physical description in the warrant. Three days still okay? I mean, pretty soon, I mean, this just jumps out at you. This is not the guy. I would say one day is okay from the county's perspective because, again, the county is looking at a guy who has, there are some physical indicators that match, and there are some that don't match. And, again, they don't know the circumstances that led LAPD to believe that he was the subject of the warrant. And the best thing to do is to bring the court into the equation and let the court decide. The plaintiff's argument takes the court out of the equation altogether. It's actually beneficial to the arrestee that he be brought to court rather than be released. There are certain things that the court can do. In the meantime, he spends four days in the county jail. He spent one day in the county jail. He spent one day in the county jail and three days at the local Parker Station or wherever it might be. The county really can't control him. Have you ever been to jail? I have not, Your Honor. I've had it for four days. I would say, though, that the court, there are certain things that the court can do that the sheriff's department can't do. Like recall the warrant. The sheriff's department can't do that. If the sheriff's department releases this guy, he could very easily be picked up 10 minutes later on the same warrant because it's still out there. The court can make sure that that doesn't happen. The court can also give him what's called a judicial clearance form, which is a form that ---- Does the county ever release people on its own without going to the court thinking, hey, we got the wrong guy? As a matter of fact, they do. And they have very strict policies on when a guy comes in and says, hey, I'm the wrong person, there are certain steps that they're supposed to take. They're supposed to do a fingerprint comparison, actually a manual fingerprint comparison, not just comparison of CII numbers. Well, and let me add, but that then raises the question, did they have available to, did either the city or the county have available the fingerprint of the other guy? I don't know about the city. And I'm glad you brought that up because I wanted to point that out. There's no allegation that the county had the fingerprints of the original warrants, of the true warrant suspect to compare to the arrestee's fingerprints. And you can imagine a situation where someone is arrested by, let's say, Long Beach police, brought to court for arraignment, is arraigned, is released on his own recognizance. Now, the court date is set. The individual is never in county custody. So the county doesn't have a file on this person, doesn't show up for his next court date. The court issues a bench warrant. The person is then picked up and then ends up in county custody. So the county may very well not have the fingerprints. They can go run around and track them down. They can maybe go to the court. The court would have a file or the DA would have a file. Would the county have the ability to enter the CII number of the other guy and just push a button and get the fingerprint come up, at least I'm told the city could do? No. The live scan printout actually doesn't have the fingerprints, the manual fingerprints. It just has a criminal history and it would have the individual's identifying information along with the CII number. But it doesn't have, I've seen many live scan printouts, and it doesn't have the actual fingerprints, the actual manual fingerprints. But can you get the fingerprints of the other guy? You can get the fingerprints of the guy who's in front of you easily. Right. Armed with the CII number of this other one, the number that doesn't match, can you get those fingerprints and how? Not just with the CII number. I think what they would have to do, like I said, is go to the court. The court would have a file. They may be in the court file or go to the DA's file. They would have to do a lot of running around. And by the way, this could take up, if not a day, the better part of a day. Right. So the individual would still be in custody for quite a long period of time while they're running around trying to find this information and make the comparison. And when the judge lets him out, he doesn't have that fingerprint information. The judge lets him out based on the information that you have in front of you. Quite possibly. Sometimes I have seen situations. What about this case? When the judge ordered this man released, did he have any more information than you had in the file as it came to you? That I don't know. That I don't know. But I have seen situations where the court will do, the court will order the Sheriff's Department to conduct a manual fingerprint comparison. Okay. You're eating into. Yes. I will at this point yield to the city. Thank you. Good afternoon, Your Honors. Amy Field on behalf of Appellees, the City of Los Angeles. I want to reiterate that we did not bring this motion to dismiss. A plaintiff conceded on several occasions that whatever the district court ruled as to the county applied equally as to the city. I think in doing that, he waived any argument that he had against the individual officers that arrested the plaintiff in the field, that they didn't have probable cause at the time they arrested him out in the field to believe he was, in fact, the person named in the warrant. And I find it... The length of detention. I think that probably concerns us more. The length of detention. The plaintiff was held. He was arrested on a Saturday. You know, and I'd also like to respond to a lot of things that Mr. Cook said that went way outside the record, because I think he's presented a very, very inaccurate version of what went on in this case. What happened in this case is two LAPD officers were out on patrol. They ran Mr. Alvarado's license plate. The license plate came back with a warrant for a misdemeanor hit-and-run case, a bench warrant, against the registered owner of the truck Mr. Alvarado was driving. They pulled Mr. Alvarado over. He didn't have any ID. His wife brought down the ID, and he was, in fact, the registered owner of this truck he was driving. So there was a valid warrant out for Mr. Alvarado's arrest, and that's made very clear in the arrest report. I think a minimal amount of investigation on behalf of the plaintiff would have revealed this to him. He knows this. So Mr. Alvarado was arrested on a misdemeanor warrant that was apparently for him. He was taken into custody on a Saturday. When he was booked at the station, they ran his criminal history. It pulled up the other warrant, the warrant for Mr. Walfre Hernandez. Mr. Hernandez used an AKA of Julio Alvarado. Mr. Hernandez lived at the exact same address as Mr. Julio Alvarado, and their physical descriptions, while not exact, were similar. The height was off by a couple of inches. It was three inches? Yeah, three inches, I believe. And what was the difference in the poundage? I'm sorry? And the difference in weight? The weight on Mr. Alvarado's hit-and-run warrant was listed at 140. The weight on the Hernandez warrant, AKA Julio Alvarado, was listed at 136. And the other guy? I'm sorry? And the other guy, the true other guy, what's his weight? Mr. Hernandez? We don't know. I assume 136. I assume that that was accurate. I thought I read 200 pounds. I think that I read that, too. I don't know. You know, people's weight changes. I mean, I don't want you to look at what's listed on my driver's license is my weight. It's changed. So let's get a more accurate picture of what's happened here. Monday morning, Mr. Alvarado was brought before the court on his misdemeanor warrant. The bench warrant was recalled. He was remanded into custody. And the very next day, he was brought to court on the Walfre Hernandez warrant, and he was cleared on that one. I'd also like to clarify. Was he kept in custody on the warrant that was for him? I believe he was. I've looked at the misdemeanor docket in that case, and my reading of it was that he was remanded into custody that day. There's an indication on the docket that the case was set for a bail review. It doesn't seem like that ever happened. The next court appearance on the hit-and-run case was a month later, the 30-day mark. And at that point, that case was dismissed, 1385, in the interest of justice. And the entry on the misdemeanor docket shows that he was released from custody that day. I don't know if something happened in the interim. But it's kind of hard for me to believe he was held on a misdemeanor hit-and-run for 30 days. But that's what the docket says. I just, let me, so what's the point of, is your point that when he was arrested in the field by the officers on the warrant, on the bench warrant? There was definitely probable cause to arrest him. And he was the Mr. Alvarado identified in the bench warrant? Yes. I mean, I believe he was. Okay, so then he's taken down. The case was ultimately dismissed, but.  Correct. And he's held on that warrant. Correct. None of this was before the district judge, though. That's correct, Your Honor. I think, you know, I think that the county was completely reasonable in bringing this as a motion to dismiss. I think the district court, it was completely appropriate for the district court to grant the motion. And since the basis of the complaint seemed to be whether the CII numbers provided actual knowledge that the wrong person was in custody on the Walfrey Hernandez warrant, I think that the district court correctly and plaintiff conceded dismissed us to the city as well. I think our tact in this case was to take a little bit more of a conservative approach and wait to raise the issue on summary judgment, you know, had we had the opportunity. And all this would have been developed. The district court just seemed to go off on Baker. That was it. And I think this case falls squarely within Baker. I think that the case would fall within the exception to Baker if, in fact, the CII number gave the city or the county actual notice that the wrong person was in custody. I don't think the CII number is dispositive. That might be a question of fact, though, right? Well, I think that no, I don't think you have to accept that as fact. I think that, you know, it's just common knowledge numbers. Could we take judicial notice of it? Probably. I think so. I'll allow you to. Let's just say probably. Yeah. I don't think you have to accept that as true, that a CII number is dispositive. I think the only way that you can have actual knowledge that you have the wrong person in custody is to pull the prints and do a manual comparison of them. As the county has already, as Mr. Caron has already represented, that takes time. You have to go and track down the fingerprints on the warrant that you're holding the guy on and compare them to the person you have in custody. I think that happened very quickly here. And my guess is that that's what happened Tuesday morning in court on the Walfre Hernandez case. In my experience, I worked for many years in the criminal courts, and I do remember many, many occasions where the wrong person was in custody, but the only way it could be verified was to roll his prints and pull the prints on the person who the warrant had been issued for. And I think under Baker v. McCollum, four days is not an unreasonable amount of time to accomplish this task. As a matter of law? As a matter of law. Okay. Okay, thank you. Thank you. Response. Yes. Baker v. McCollum is a due process case, no Fourth Amendment claim here. There's a Fourth Amendment claim. I'm rather surprised that Mr. Carone made some of the representations that he did because we're opposing counsel on other of these types of cases. He's been at depositions of his people. I've deposed on the jail system. This happens to be the felony warrant that kept Mr. Alvarado in jail, no bail warrant. has Walford Hernandez' CII number and has people for the county and the state have testified with the CII number. You access all of the criminal history, a few additional buttons. You get the fingerprints for it. Plus, he had an L.A. main number, which means prints are on file with L.A. County. So was there an initial warrant? I had run across the same court record that Ms. Field referred to. There was apparently a misdemeanor warrant, the kind of warrant you get cited out on or usually post bail. It was his felony no bail warrant for Walford Hernandez that kept him in. That's not my question. Was there, when they initially arrested him, did they arrest him pursuant to some other warrant? I don't know. The reason I don't know is because I asked the city, I asked them for the record. They wouldn't give it to me. I asked the district court, let us get the warrant. He wouldn't order it released. And so from Ms. Field to client that I didn't do some minimal investigation. It's like you've been referring to matters outside the record. She's referring to matters outside the record. Well, I take a little bit of offense when she suggests I didn't try and do an investigation because I run on this problem a lot. I don't want to file lawsuits that don't have meritorious claims. And I try to get records from the city. They won't give it to me. I have to practically file a lawsuit before I can get any information. And as far as this waiver of probable cause argument, there was no waiver. My point all along to the district judge, you listen to that or read the transcript of the hearing, is that this person was obviously not Walford Hernandez. They should have known it. They ignored it because that's their practice and therefore he should be allowed to proceed. District court took the position. It doesn't matter. It's a real warrant. It didn't come off of Adobe Photoshop. And it's less than, you know, 12 days in Erdman. It's about the same amount of time in Baker. That ends the case. That was the district court's view. That was the defendant's position in the court below. They now acknowledge you have to have probable cause to believe he's the person on the warrant before you can take him into custody. They didn't have that PC here. Maybe some of these facts will resolve the case dispositively in the defendant's favor, right? But that would be on summary judgment or even trial. You don't dismiss the complaint at a 12D6 stage. That's my point. Thank you. Thank you. Thank you very much. Okay. Case of Alvarado v. Bratton is now submitted for decision. Last case on the argument calendar this morning, Spiritos v. Nielsen.
judges: Fletcher, Paez, Duffy